**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | **CIVIL ACTION NO. 1:05-CV-2053** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN KOSCINSKI and ANTOINETTE** | : | |
| **F. KOSCINSKI**, | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

The David Wills House ("Wills House") is a majestic, three story, federal-style brick building that stands on the eastern corner of the town square in Gettysburg, Pennsylvania.  Built circa 1816, the structure was originally a one-story building housing various merchant shops.  In 1839 it was converted into the "American Hotel," and twenty years later became the property of David Wills, a prominent attorney—and later county judge—who added two stories to the building and used it as his residence and law office.[1]  Although the almost 200 year-old building is historically significant in its own right, it is renowned as the quarters of President Abraham Lincoln on November 18, 1963.  Lincoln was a guest of the Wills House the night before he delivered the "Gettysburg Address," his now famous dedication of a national cemetery on the grounds of the Battle of Gettysburg.  Indeed, scholars still debate the extent to which Lincoln penned the extraordinary speech in the

---

[1]  <u>See</u> Through Hallowed Ground: Adams County, David Wills House, http://www.hallowedground.org/jthg/view-269.html (last visited Feb. 14, 2006).

Wills House.[2]  (See Docs. 1, 14.)

In October 2000 the Wills House became part of the Gettysburg National
Military Park, and in March 2004 the Borough of Gettysburg sold the property to
the National Park Service for $550,000.  (See Doc. 1, Ex. 1 ¶ 3; Doc. 14 at 3.)  The
historic site's popularity prompted Congress to appropriate approximately $5.5
million for its renovation.  The Wills House attracted over 10,000 visitors in 2005
and, according to a commissioned study, the proposed renovations will attract an
additional 140,000 visitors annually.[3]

Adjacent to the David Wills House sits a two-story building owned by the
defendants in this case, John and Antoinette Koscinski ("Koscinskis").  The first
floor of this property is occupied by a commercial entity, and the second floor is
comprised of apartments.  The Koscinski property and the David Wills House share
a  common, or "party," wall.[4]  In October 2005 the United States commenced the

---

[2]  See Abraham Lincoln Online, Historic Places Wills House,
http://showcase.netins.net/web/creative/lincoln/sites/wills.htm (last visited Feb. 14,
2006); American Treasures of the Library of Congress, First Draft of Gettysburg
Address,  http://www.loc.gov/exhibits/treasures/trt034.html (last visited Feb. 14,
2006).

[3]  (See Gov't Ex. 11.)

[4]  See Sobien v. Mullin, 783 A.2d 795, 798 (Pa. Super. Ct. 2001) ("A party wall
may be defined generally as a wall located upon or at the division line between
adjoining property landowners and used or intended to be used by both in the
construction or maintenance of improvements on their respective tracts, or . . . as a
dividing wall for the common benefit and convenience of the tenements which it
separates. . . .  A distinctive feature of a party wall is that the adjacent buildings are
so constructed that each derives its support from the common wall." (quoting 40
AM. JUR. *Party Walls* § 2 (1942)).

instant lawsuit, seeking an injunction to gain access to the Koscinski property for

the purposes of repairing the common wall and renovating the Wills House. (See

Doc. 1.) Following a telephone conference with counsel the court directed briefing

on the appropriateness of an injunction, and a hearing was held on the matter on

January 24, 2006.[5] At the hearing the Koscinskis did not present any evidence and

conceded the propriety of injunctive relief.[6]

The requirements for preliminary injunctive relief are well settled. The

moving party must establish that (1) there is a reasonable probability of success on

the merits, (2) irreparable injury will result without injunctive relief, (3) granting the

injunction will avoid a comparably greater injury than denying it, and (4) the

injunction is in the public interest. See BP Chems., Ltd. v. Formosa Chem. & Fibre

Corp., 229 F.3d 254, 263 (3d Cir. 2000); see also Acierno v. New Castle County, 40

F.3d 645, 653 (3d Cir. 1994); Neo Gen Screening, Inc. v. TeleChem Int'l, Inc., 69 F.

App'x 550, 554 (3d Cir. 2003); Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

While each factor need not be established beyond doubt, they must combine to

show the immediate necessity of injunctive relief. See Swartzwelder v. McNeilly,

297 F.3d 228, 234 (3d Cir. 2002); see also Walgreen Co. v. Sara Creek Prop. Co., 966

---

[5] The hearing was initially scheduled to commence on December 15, 2005 (see Doc. 9), but was postponed due, in part, to the withdrawal of defendants' original counsel. (See Docs. 15, 19; see also Docs. 25, 26.)

[6] Proposed orders recently submitted by the parties differ only in the parameters of the injunctive relief. (Compare Doc. 29, with Doc. 30.) Because the Koscinskis have acknowledged the propriety of injunctive relief, the court will set forth its findings in summary fashion.

F.2d 273, 275-79 (7th Cir. 1992) (Posner, J.); 11A CHARLES ALAN WRIGHT ET AL.,

FEDERAL PRACTICE AND PROCEDURE § 2948.3 (3d ed. 1998).

With respect to the first factor, the likelihood of success on the merits,

defendants acknowledge that the United States has a right to enter the Koscinski

property to repair those areas common to the Wills House.[7]

As to the second factor—that irreparable injury would result without the

issuance of an injunction—there is ample evidence that irremediable harm will

ensue if access to the Koscinski property is denied.  Extensive and credible

testimony was provided by Dr. John Latschar, the superintendent of Gettysburg

National Military Park, and by Mr. Paul Newman, an architect specializing in

historical renovations who is employed by the National Park Service.  These

witnesses opined that the David Wills House is in a severe state of deterioration, no

longer structurally sound, and in violation of fire and safety codes.  The testimony

and evidence reflect that the house is in need of immediate repair:  the chimney is

_____

[7] Under Pennsylvania law, rights of access to party-wall property are
governed by statutory or regulatory authority.  See Sobien, 783 A.2d at 798 ("Party
wall rights did not exist at common law.  Rather, such rights are granted to
adjoining landowners by statute . . . ."); see also Jackman v. Rosenbaum Co., 106 A.
238 (Pa. 1919) (discussing history of "party wall" doctrine, and noting that rights of
entry are derived from laws and regulations enacted by virtue of police power of
state); id. at 240 ("[Regulations governing party walls] are primarily designed to
guard life and property; and the theory which sustains these laws as police statutes
seems to be that in thickly populated cities there is a constant menace from fire,
against which they serve as common protection."); Hoffstot v. Voigt, 23 A. 351, 351-
52 (Pa. 1892) ("The regulation of party-walls is a very ancient form of exercise of the
police power . . . . [b]ut such regulation . . . is an interference with the rights and
enjoyment of the property, sustainable only on the police power, and therefore to be
governed and measured by the strict extent of the statutory grant.").

collapsing under its own weight, the roof is sagging, chinks are forming in and bricks are missing from the common wall in the attic, and beams and rafters are rotting.  Mr. Newman testified that it is doubtful whether the rafters are of sufficient strength to withstand typical wind and snow loads.

In the basement of the Wills House the common wall is eroding and the masonry is crumbling into piles of dust.  The foundation is exposed in various areas, underscoring the lack of structural support, and wooden support posts, sitting on a dirt floor, are rotting.  The soil around these columns is loose, and the area is in need of underpinning—at least one column has already failed.  The electrical wiring is antiquated and substandard, water pipes are suspended from the ceiling by duct tape, and the property lacks a firewall to afford protection to the adjoining properties.  Based upon the evidence of record, the court finds that, absent prompt preservation efforts, this historic site will continue to deteriorate and suffer from "localized" failures, and that such repairs cannot be made without access to defendants' property.[8]

With respect to the third and fourth factors for injunctive relief—that granting the injunction will avoid a comparably greater harm and is in the public

---

[8] The court notes that over $1.5 million has already been expended on this project.  Plaintiff estimates that the dispute *sub judice* has caused a delay in the renovations that will cost the government $360,000.  But cf. Acierno, 40 F.3d at 653 (stating that "economic loss does not constitute irreparable harm"); Frank's GMC Truck Ctr., Inc. v. Gen. Motors, 847 F.2d 100, 102 n.3 (3d Cir. 1998) (stating that where money damages are available injunctive relief is inappropriate because "the applicant has an adequate remedy at law"); Liveware Publ'g Inc. v. Best Software Inc., 125 F. App'x 428, 433 (3d Cir. 2005) (same).

interest—the evidence demonstrates that injunctive relief will bring minimal harm

to the Koscinskis while preserving an historic landmark for public use.  The

scheduled renovations will affect only the basement, attic and roof, and alleyway of

the Koscinski property.  Renovations in the basement are estimated to take three to

five months to complete.  Renovations to the attic and roof should be completed in

two to three months.  Work requiring access to the alleyway will be sporadic.  With

the unavoidable exception of occasional noise, the renovations will not unduly

interfere with the activities of the tenants in the Koscinski property.  Moreover, the

government's renovation contracts appropriately ensure the repair of any damage

to the Koscinski's property.  Finally, it noteworthy that these renovations will

confer on the Koscinski property a structural improvement benefit valued in excess

of $130,000.

As conceded by defendants, the facts of this case weigh heavily in favor of

granting injunctive relief.  The time to begin preservation of this significant

national landmark is upon us.  Let the work begin in accordance with the following

order.[9]

         S/ Christopher C. Conner
         CHRISTOPHER C. CONNER
         United States District Judge

Dated:      February 14, 2006

---

[9]  The court notes that the granting of preliminary injunctive relief is likely dispositive of this matter.  Accordingly, the court will direct the parties to show cause why it should not invoke the provisions of Rule 65(a)(2) and deem this an adjudication on the merits.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION NO. 1:05-CV-2053** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN KOSCINSKI and ANTOINETTE** | : | |
| **F. KOSCINSKI,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of February, 2006, upon consideration of plaintiff's

motion (Doc. 13) for injunctive relief, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that the motion (Doc. 13) is

GRANTED as follows:

   1.   Defendants John Koscinski and Antoinette Koscinski and any
person(s) acting under their direction or pursuant to their authority
are ENJOINED from interfering with the reasonable access of
plaintiff, or any person(s) acting under its direction or pursuant to its
authority, to the structure located at 17 York Street, Gettysburg,
Pennsylvania, for the purpose of effecting repairs to plaintiff's
structure located at 7 Lincoln Square, Gettysburg, Pennsylvania.

   2.   Plaintiff shall proceed with its project in accordance with the plans,
drawings, and descriptions as presented to the court, and shall take all
reasonable precautions to minimize the impact of its renovation
project on defendants' premises, and the use of defendants' premises.
Without limiting the generality of the foregoing, plaintiff shall take
affirmative steps to resolve at its sole expense the following points of
concern as identified during the January 24, 2006 hearing:

      a.   Upon termination of the common access entry to the basement
of defendants' building, plaintiff shall provide a suitable
alternate basement entryway, stairs, and secure door or other
closure for defendants' basement, at a location that is compliant

with the requirements of the Borough of Gettysburg.

b.     For the duration of the project, so long as work impacts or
       affects the reasonable use and enjoyment of defendants'
       property, and the means of ingress and egress thereto, plaintiff
       shall be responsible for providing property protection and
       physical security in the areas under construction and affected
       by construction.

c.     Plaintiff shall provide for its own separate sanitary sewer line,
       and shall properly terminate the common sewer line.

d.     Within a reasonable time of removal of the fire escape serving
       the second floor rear of defendants' building, plaintiff shall
       provide an alternative means of fire escape from the second
       floor.

3.     Plaintiff shall provide to defendants and their tenants reasonable
       notice of the schedule and duration of project activities.

4.     Plaintiff shall require its contractors to indemnify defendants from any
       loss, damage, or liabilities, which may be caused by or otherwise arise
       from its renovation project.  This indemnification shall be limited to
       the insurance coverage required by applicable law.

5.     Should disputes arise with respect to any of the provisions contained
       herein, or with respect to the implementation of any such provision,
       either party may request a conference with the court, which shall
       retain jurisdiction over this matter until the completion of the
       renovation project.

6.     The parties shall, on or before February 28, 2006, show cause why this
       memorandum and order should not be deemed an adjudication on the
       merits.  See FED. R. CIV. P. 65(a)(2).  In the absence of such showing
       this order shall be deemed an adjudication on the merits.


                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge